Gilma Esperanza
**ESTRADA–POSADAS, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALI-
ZATION SERVICE, Respondent.**

No. 89–70307.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Jan. 30, 1991.

As Amended on Denial of Rehearing
and Rehearing En Banc
April 24, 1991.

Tom Stanley, Los Angeles, Cal., for petitioner.

Stand Blumenfeld, Asst. U.S. Atty., and Gregg L. Cunningham, Sp. Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before WALLACE and POOLE, Circuit Judges, and THOMPSON,* District Judge.

WALLACE, Circuit Judge:

Estrada–Posadas (Estrada) petitions for review of a decision by the Board of Immigration Appeals (Board). The Board dismissed Estrada's appeal, affirming an immigration judge's order of deportation and denial of voluntary departure. Estrada claims that she qualifies for refugee status due to a well-founded fear of persecution, and thus is entitled to relief from deportation. Alternatively, she asserts that she should have been allowed to depart voluntarily. We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105a, and deny it.

I

Estrada is a 38–year–old native and citizen of Guatemala. She first illegally entered the United States in November 1985 with the help of an alien smuggler. Upon the illness and subsequent death of her husband from a heart attack, she returned to Guatemala in April 1986 and lived with her mother. Three months later, she again enlisted the services of a smuggler, and

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

reentered the United States. She was apprehended by the Immigration and Naturalization Service (INS) near San Ysidro, California.

The INS instituted deportation proceedings against Estrada for entering the United States without inspection, pursuant to section 241(a)(2) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1251(a)(2). At the deportation hearing in November 1986, Estrada conceded deportability and requested relief based on political asylum and withholding of deportation. In the alternative, she sought voluntary departure.

In support of her claims, Estrada testified that a cousin had been kidnapped in 1985 and that an uncle had been killed in 1986. She stated that relatives on her mother's side of the family had been forced to abandon their lands and move to another part of Guatemala. Estrada testified that she felt similar dangers awaited her if she remained in Guatemala, and stated that she left "[b]ecause of the political situation in [her] country."

At the conclusion of the hearing, the immigration judge denied Estrada's requests for relief from deportation and her application for voluntary departure. Estrada appealed the decision, but the Board dismissed her appeal in April 1989.

## II

■ Section 243(h) of the Act, 8 U.S.C. § 1253(h), requires the Attorney General to withhold deportation "if the Attorney General determines that such alien's life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h) is a mandatory provision which entitles the alien to a withholding of deportation upon proof of a clear probability of persecution. *Diaz–Escobar v. INS*, 782 F.2d 1488, 1491 (9th Cir.1986) (*Diaz–Escobar*). We review the Board's decision to grant or deny the withholding of deportation for substantial evidence. *Id.* at 1491–92.

■ Section 208(a) of the Act, 8 U.S.C. § 1158(a), gives the Attorney General dis-

cretion to grant political asylum if the Attorney General determines the alien to be a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). Like section 243(h), section 101(a)(42)(A) requires proof of persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility, however, the alien need not meet the clear probability test. *Diaz–Escobar*, 782 F.2d at 1491. Rather, the alien need only prove a well-founded fear of persecution. *De Valle v. INS*, 901 F.2d 787, 790 (9th Cir.1990) (*De Valle*). A well-founded fear must be both subjectively and objectively reasonable. *See id.* The subjective component requires a showing that the alien's fear is genuine. *Id.* The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution. *Id.* We review the Board's denial of asylum eligibility for substantial evidence. *Id.*

Under each deferential standard, we may not reverse the Board simply because we disagree with its evaluation of the facts, but only if we conclude that the Board's evaluation is not supported by substantial evidence. *Echeverria–Hernandez v. INS*, 923 F.2d 688, 691 (9th Cir.1991). This standard requires only that the Board's conclusion, based on the evidence presented, is substantially reasonable. *Id.*

### A.

■ We first discuss Estrada's claim that she is entitled to political asylum. Estrada argues that her uncle's death, her cousin's disappearance, and the forced move of her mother's relatives justify a finding of a well-founded fear of persecution. The evidence offered in this regard consisted solely of her own testimony. We have held that where corroborating documentary evidence is unavailable, an alien's testimony alone will suffice to prove a well-founded fear, but only if "it is credible,

persuasive, and specific." *Aguilera–Cota v. INS*, 914 F.2d 1375, 1379 (9th Cir.1990).

■ The immigration judge, however, determined that Estrada was not a credible witness. After listening to Estrada's testimony, he found it "replete with vague, unspecific, general, inconsistent and contradictory testimony." For example, when asked on her application for asylum whether any member of her family had been mistreated by authorities in Guatemala, Estrada stated that her brother was killed in his role as a guard for a political figure. When questioned by the immigration judge at her deportation hearing, however, Estrada contradicted this statement by replying that all three of her brothers were living, one in Canada and two in the United States. Estrada argues that substantial evidence does not support the immigration judge's adverse credibility finding. Because the immigration judge offered "specific, cogent reason[s] for his disbelief," however, it appears that substantial evidence supports his credibility determination. *Turcios v. INS*, 821 F.2d 1396, 1399 (9th Cir.1987) (quotations omitted).

■ We need not decide this question, however. Even accepting Estrada's factual assertions, she fails to qualify for political asylum. In making this determination, we assume that Estrada's fear is genuine, and that she therefore satisfies the subjective component of the well-founded fear standard. *See Rodriguez–Rivera v. INS*, 848 F.2d 998, 1002 (9th Cir.1988) (*Rodriguez–Rivera*). Her testimony, however, fails to support a reasonable fear that she will face persecution on account of the grounds specified in the Act, and she therefore fails to satisfy the objective component necessary for statutory eligibility. *See id.;* 8 U.S.C. § 1101(a)(42)(A).

Estrada first argues that her testimony is sufficient to show a well-founded fear of persecution on account of political opinion. Estrada does not claim that she fears persecution because of political opinions that she actually holds, but argues instead that the doctrine of imputed political opinion should apply to her. We have held that, on limited occasions, certain conscious and deliberate acts or decisions by an alien may establish a well-founded fear of persecution on account of imputed political opinion, but only when a persecutor attributes political beliefs to the alien as a result of these acts or decisions. *Desir v. Ilchert*, 840 F.2d 723, 728–29 (9th Cir.1988) (citing *Del Valle v. INS*, 776 F.2d 1407 (9th Cir.1985); *Bolanos–Hernandez v. INS*, 767 F.2d 1277 (9th Cir.1984); *Argueta v. INS*, 759 F.2d 1395 (9th Cir.1985)). Thus, a refusal to join a non-governmental guerrilla group and related threats of harm following the refusal to join, although unaccompanied by any expression of political belief, may justify a finding of persecution on account of political opinion. *See Alonzo v. INS*, 915 F.2d 546, 549 (9th Cir.1990) (*Alonzo*). We have recently criticized, however, the imputed opinion theory of asylum eligibility. *See id.; Cuadras v. INS*, 910 F.2d 567, 571 (9th Cir.1990). Moreover, Estrada has not shown that her alleged persecutors have attributed political opinions to her as a result of any deliberate action on her part, such as a refusal to join guerrilla forces. No reason therefore exists to presume that any persecution of Estrada would be on account of political opinion. *See Alonzo*, 915 F.2d at 549.

■ Second, Estrada argues that persecution based on membership in her family should qualify as "persecution on account of ... membership in a particular social group" under the Act. 8 U.S.C. § 1101(a)(42)(A). However, she cites to no case that extends the concept of persecution of a social group to the persecution of a family, and we hold it does not. If Congress had intended to grant refugee status on account of "family membership," it would have said so. Thus, Estrada has not shown that any persecution would be on account of her membership in any social group.

■ Furthermore, Estrada's attempts to prove a well-founded fear of persecution fail at a more basic level. To gain relief from deportation, Estrada is required to demonstrate a fear of "[p]ersecution by the government or by a group which the government is unable to control." *McMullen v. INS*, 658 F.2d 1312, 1315 (9th Cir.

1981). She has failed to show satisfactorily that she reasonably fears persecution from either source. Estrada presented no evidence that either the Guatemalan government or guerrilla forces participated in the death of her uncle or the disappearance of her cousin. She admitted that she had never been personally threatened or harmed by any person or organization in Guatemala, and that neither the government nor the guerrillas have been looking for her since she left. In fact, the Guatemalan government freely permitted her to enter and exit the country when her husband died, and issued her a passport for that purpose. Estrada's family, including her mother, sister, and adult child, now live in Guatemala. She testified that they have experienced no personal difficulties other than those caused by the problems of the country as a whole.

Estrada presented no evidence to show that her "predicament is appreciably different from the dangers faced by [her] fellow citizens." *Vides–Vides v. INS*, 783 F.2d 1463, 1469 (9th Cir.1986); *see also Zepeda–Melendez v. INS*, 741 F.2d 285, 289–90 (9th Cir.1984) (holding that "generalized allegations of persecution resulting from the political climate of a nation" do not suffice). Thus, we hold that substantial evidence supports the Board's conclusion that Estrada failed to demonstrate a well-founded fear of persecution.

### B.

■ Estrada also contends that she is entitled to a mandatory withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h). To be entitled to such relief, however, she must show a " 'clear probability' " that she will be persecuted upon return to Guatemala. *See Barraza Rivera v. INS*, 913 F.2d 1443, 1449 (9th Cir.1990), *quoting INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). The clear probability standard requires a greater showing than the well-founded fear standard applicable to political asylum requests. *Id.* Because we have concluded that substantial evidence supports the Board's determination that

Estrada does not qualify for political asylum, it follows that the Board's denial of withholding of deportation was also correct. *See Rodriguez–Rivera*, 848 F.2d at 1007.

### III

■ Estrada contends in the alternative that the immigration judge should have granted her voluntary departure in lieu of deportation pursuant to 8 C.F.R. § 244.1 (1990). The decision to grant or deny a request for voluntary departure is a matter wholly within the discretion of the Board. *Cunanan v. INS*, 856 F.2d 1373, 1374 (9th Cir.1988). On review, we "may examine only whether discretion was actually exercised and whether the manner in which it was exercised was arbitrary or capricious." *Cuevas–Ortega v. INS*, 588 F.2d 1274, 1278 (9th Cir.1979) (*Cuevas–Ortega*).

The Board correctly relied on the fact that Estrada had twice before used alien smugglers to enter the United States. We have stated before that the acceptance of voluntary departure must contain "the implied understanding that an alien will not illegally reenter the United States." *Hernandez–Luis v. INS*, 869 F.2d 496, 499 (9th Cir.1989) (*Hernandez–Luis*). As a result of Estrada's prior surreptitious entries into the country, the Board reasonably doubted both her willingness to leave the United States promptly and her implied promise not to return. *See id.;* 8 C.F.R. § 244.1 (1990). We conclude that the Board "support[ed] its conclusion with a reasoned explanation based on legitimate concerns," and therefore properly exercised its discretion. *Hernandez–Luis*, 869 F.2d at 499, *citing Vargas v. INS*, 831 F.2d 906, 908 (9th Cir.1987).

Furthermore, to be eligible for voluntary departure, Estrada bears the burden of proving that she has been of good moral character for at least the five years preceding her application. 8 U.S.C. § 1254(e); *Cuevas–Ortega*, 588 F.2d at 1278. Estrada, however, presented no evidence to sustain this burden. In fact, the unexplained discrepancies between her written application and her oral testimony suggest the

contrary. In addition, entering this country twice with the aid of smugglers is also proof adverse to good moral character. We hold that the Board was not arbitrary or capricious in the exercise of its discretion. *See id.*

PETITION DENIED.